## WILLIAM CUNLIFF v. THE DYERVILLE MANUFACTURING COMPANY.

In the absence of all agreement or understanding to that effect, one copartner of a manufacturing firm is not entitled, as against the other, to compensation for his services in preparing the mills operated by them, for their joint use, and in superintending their operation for the firm; nor is it material to the right to such compensation, that, upon the dissolution of the firm and the settlement of its accounts, the title to one of the mills operated by the firm was claimed by, and conceded to, the copartner, of whom compensation for such services was sought.

ASSUMPSIT against the defendant, who did business under the name of the Dyerville Manufacturing Company, to recover the sum of $1680,62, for services of the plaintiff in superintending the repairs of the Centredale Mill, in North Providence, from March 9th, 1859, to October 1, 1859, in order to prepare the same for the use of the Dyerville Manufacturing Co., then composed of the plaintiff and defendant; and also, to recover the additional sum of $530.00, for the plaintiff's services in superintending the Centredale and Dyerville Mills, whilst operated by the said firm, from the first day of October, 1859, to the third day of December, 1859,—the plaintiff charging for the same at the rate of $3000.00 per annum.

The case came on for trial, under the general issue, before the Chief Justice, with a jury, at the September term, 1861, for the county of Providence, when it appeared, from the plaintiff's

evidence, that the plaintiff and defendant had been copartners in the business of manufacturing cotton goods, under the firm of the Dyerville Manufacturing Company, with written articles of copartnership, from the first day of October, 1854, to the first day of October, 1859; and that, after the five years limited in said articles, they continued copartners in the same business, until, by an instrument dated December 1st, 1859, and executed on the 3d day of December, 1859, said copartnership was dissolved; that, during their said copartnership, the plaintiff and defendant owned and operated, as copartners, machinery both at the Centredale and Dyerville Mills,—the defendant attending to the financial part of the business, to the purchase of materials for manufacturing and to the sale of the manufactured goods, at Providence,—and the plaintiff, superintending the operation of the mills; and that there was no agreement or understanding that either partner should receive any compensation from the firm for his services in the business of the firm.

Upon this presentation of his case by the plaintiff, the presiding judge intimated that he should instruct the jury, that the plaintiff could not recover against his copartner for services in the joint business, performed during the copartnership; and it being answered, on the part of the plaintiff, that in the settlement of the copartnership by the pliantiff and defendant, the defendant claimed that the title to the real estate at Centredale was purchased by him not for the firm, but for himself individually, in which claim the plaintiff acquiesced, the presiding judge stated that this circumstance would not, in his judgment, vary the case; it being agreed that all the services for which the plaintiff claimed compensation in this action were performed by him as a copartner and during the copartnership, in preparing the Centredale Mill for, and operating both that and the Dyerville Mill in, the business of the firm.

Upon this intimation, the plaintiff submitted to a verdict against him, with the right reserved to him to except to the above rulings, and proposed instructions to the jury.

*Payne, for the plaintiff.*

*Hart, with whom was Wm. H. Potter, for the defendant.*

BULLOCK, J.   This is a motion by the plaintiff for a new trial,

on the ground of misdirection of the jury by the Chief Justice trying the cause, in matter of law.

The plaintiff and one Amos N. Beckwith were copartners in the cotton manufacturing business, under the name of the Dyerville Manufacturing Co.; the terms and duration of the copartnership were witnessed by written articles, limiting its continuance to five years from the first day of October, A. D. 1854. The copartnership continued after this limitation, and without any new articles or agreement, to the third day of December, A. D. 1859, when it was dissolved. The plaintiff claims to recover for personal services rendered, from March 9th to October 1st, A. D. 1859, in preparing the Centredale Mill for the use of the firm, and superintending the Centredale and Dyerville Mills, both of which were operated by the firm.

The Chief Justice instructed the jury that, in the absence of evidence of some agreement or understanding that the plaintiff was to receive compensation for his personal services in superintending or preparing said mills for the use of the firm, he could not recover; and that, for the purposes of this action, it was not material whether the title to the real estate upon which the Centredale Mill was located was in the defendant, or in the firm.

A contract of copartnership presupposes it to be for the common benefit of all of the copartners; and there being no stipulation to the contrary, that each shall devote as much of his skill, capital, or labor, as may be necessary to the attainment of the ends for which the copartnership was formed, without separate reward. Contracts of this character are defined to be a *joining* together of the money, knowledge, experience, or labor, of two or more, voluntarily, and for a common purpose. This common purpose is ordinarily a common pecuniary gain. Each copartner receives, or expects to receive, his compensation out of this common profit or gain. The law implies between copartners, in all matters relating to the joint business, not only the most perfect good faith and fair dealing, but an entire unity or *oneness* of interest. This doctrine is carried to the extent, that one copartner is not permitted to make any contract, or engage in any business, *outside* of the copartnership, which involves any interest adverse to that of the firm, or that occupies any of the time, or

calls into exercise any of the skill or experience needed in the transaction of the joint business. This, we suppose to be, a mere restatement of principles of law, quite familiar and well settled. They are the principles which govern this case. The application of them defeats the plaintiff's action, because the record shows that all the service he rendered was during the continuance and in the due course of the copartnership business. The written articles in the case, and referred to by the defendant's counsel at the hearing of this motion, were important, rather for the purpose of showing the manner and proportions in which the capital was to be contributed, how the labor was to be divided, and who was to furnish the manufacturing skill, &c., than of adding strength to the defence set up by Beckwith. The clause they contain, that such copartner was to be "*free of any and all charges to the concern for his personal services,*" is but a reaffirmation of a settled rule of the law.

If the plaintiff claims for services rendered on objects *foreign* to the copartnership, we reply, no evidence was introduced, or offered to be introduced, in support of any such claim. It need hardly be said, that the mere relation of copartners does not destroy or impair every other legal relation between the parties, and that in all matters *outside* of their joint dealings, they may sue each other, and be sued by each other, as if this superadded relation did not exist.

It is not within our province to consider any supposed equities between these parties; nor have we the power to correct any inequalities of right or duties, if such exist. These were matters of contract between them, and must be regulated by the contract. It may be said, however, in this connection, that if the plaintiff expected compensation for what he regards as a *special* service rendered the defendants, it nowhere appears that any such understanding, agreement, or expectation, existed or the part of the defendant; and that there was no mutual understanding to that effect, may be inferred from the fact, that at a time subsequent to that when the *special* service is alleged to have been rendered, the plaintiff and the defendant entered into a formal agreement, under seal, providing for an appraisement, item by item, of the joint property, and the transfer, for a fixed considera-

tion, by the plaintiff to the defendant, of all the plaintiff's claim and interest therein, including the machinery which the plaintiff had repaired, set up, or put into operation; and that in this instrument no reference is made to any special claim of the plaintiff, for setting up, repairing, or operating the same. The skill of the plaintiff, and his capacity to render the particular service which is the subject, in part, of this action, namely, the repairing and fitting of mills and machinery, as well as superintending their operation, may have been the inducement upon which the defendant entered into this copartnership.

The court further ruled, that the mere fact that, in the settlement of the copartnership accounts, the defendant claimed to be the owner of the real estate at Centredale, in which claim the plaintiff acquiesced, did not vary the rights of the plaintiff in this action. The deeds, which were referred to on the hearing of this motion, and are in this case by consent, show, that the title to this real estate was, in fact, in both copartners. This claim, therefore, by the defendant, and acquiesced in by the plaintiff, might have arisen from the purchase money having been procured of, or by, the defendant. While we can see how the state of the title, and who contributed the purchase money, were important questions in the adjustment of the copartnership accounts, we cannot see how these facts were pertinent to the issue in this action. The plaintiff claims to recover compensation for special services rendered the defendant in superintending repairs on the Centredale Mill, and in superintending the operation of the Centredale and Dyerville Mills. The evidence proved, that during the whole time these services were being rendered, the plaintiff was the copartner of the defendant, and that this service consisted in placing these mills in a condition to operate, or in operating them, on joint account, and for the joint benefit. Evidence, or admission of title in the defendant, did not of itself, therefore, in this action, raise an implied promise by the defendant to compensate the plaintiff for such services, and, we think, was properly excluded, as irrelevant to the issue.

There being, then, no agreement or understanding by the defendant to pay the plaintiff for these services, nor evidence that services were rendered by the plaintiff in any other relation

than as the copartner of the defendant, the motion for a new trial must be overruled, and judgment entered upon the verdict.